1

2

3

4

5

6

7

8                             IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALEXANDER POYRAS,

11                   Petitioner,                    No. 2:12-cv-0563 JAM KJN P

12         vs.

13   F.X. CHAVEZ,

14                   Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17                   Petitioner is a state prisoner, proceeding without counsel, with an application for

18   petition of writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Before the court is respondent's

19   motion to dismiss the pending habeas petition as barred by the statute of limitations.  For the

20   reasons set forth below, respondent's motion should be granted.

21   II.  Legal Standards

22                   On April 24, 1996, the Antiterrorism and Effective Death Penalty Act

23   ("AEDPA") was enacted.  Section 2244(d)(1) of Title 8 of the United States Code provides:

24              A 1-year period of limitation shall apply to an application for a writ
                of habeas corpus by a person in custody pursuant to the judgment
25              of a State court.  The limitation period shall run from the latest of –

26   ////

1

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).

III.  Chronology

For purposes of the statute of limitations analysis, the relevant chronology of this case is as follows:

1.  On November 16, 2006, petitioner was convicted in Sacramento County Superior Court of:  six counts of forgery; five counts of receiving stolen property; four counts of various firearm offenses; two counts of unauthorized use of personal identification; possession of forged identification; possession of a controlled substance; possession of ammunition by a felon; and one count each of burglary and possession of a counterfeit apparatus.  A sentencing enhancement was found true.  Petitioner was sentenced to a determinate sentence of twenty-one years and four months in state prison.  (Respondent's Lodged Document ("LD") 1.)

2.  Petitioner filed an appeal.  On October 9, 2008, the California Court of Appeal, Third Appellate District, directed the trial court to stay the sentence imposed on two of his three convictions on counts twenty-three, twenty-four, and twenty-six; stay the sentence imposed on

2

count eight; and strike two of the receiving stolen property convictions, and remanded the matter for re-sentencing.  (LD 2.)

    3.  Petitioner did not seek review in the California Supreme Court.

    4.  On January 21, 2009, the trial court reversed the conviction for counts six and seven, and stayed the sentence imposed on counts twenty-four and twenty-six, and amended the abstract accordingly.  (LD 3.)

    5.  The original abstract of judgment and the amended abstract of judgment do not reflect a conviction for count eight.[1]  (LD 1, 3.)

    6.  Petitioner did not appeal the re-sentencing.

    7.  On August 15, 2011,[2] petitioner filed a pro se petition for writ of habeas corpus in the California Supreme Court.  (LD 4.)  On January 11, 2012, the California Supreme Court denied the petition.  (LD 5.)

    8.  No other state post conviction collateral challenge was filed by petitioner.

    9.  On February 27, 2012, pursuant to Rule 3(d) of the Federal Rules Governing Section 2254 Cases, this instant action was constructively filed.  (Dkt. No. 1 at 54.)

    Thus, petitioner's conviction became final sixty days after the January 21, 2009 entry of amended judgment by the trial court, i.e. on March 22, 2009.  See Cal. Rule of Court 8.308(a) (former Rule 30.1).  The statue of limitations began running the following day, i.e. on March 23, 2009.  Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  Petitioner had one year from that date to file a timely federal habeas corpus petition, i.e. until March 23, 2010.  But petitioner did not file his federal habeas petition until February 27, 2012, over twenty-three

////

---

[1]  Count eight alleged unlawfully obtaining and possessing personal identifying information on September 14, 2005.  (LD 2 at 2.)

[2]  Petitioner's state court habeas petition (LD 4) is given benefit of the mailbox rule.  See Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities).

1   months later.  Thus, petitioner's federal petition for writ of habeas corpus is time-barred unless

2   he is entitled to the benefit of tolling.

3   IV.  Statutory Tolling

4           Petitioner filed his first state court petition for writ of habeas corpus on August

5   15, 2011, after the statute of limitations period expired.  The filing of a state habeas petition after

6   the limitations period expired cannot revive the statute of limitations, and has no tolling effect.

7   Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jiminez v. Rice, 276 F.3d 478, 482

8   (9th Cir. 2001) (where petitioner filed his state post-conviction relief petition after AEDPA

9   statute of limitations period expired, delay results in absolute time bar.)  Therefore, petitioner's

10  collateral challenge cannot toll the limitations period because it was filed after the limitations

11  period expired.

12  V.  Equitable Tolling

13          Petitioner contends he is entitled to equitable tolling on the following grounds:

14  (1) petitioner speaks and understands little English because Russian is his primary language; (2)

15  periods of administrative segregation kept him from challenging his conviction; and (3)

16  petitioner's attorney allegedly abandoned him.

17          Equitable tolling is available to toll the one-year statute of limitations available to

18  28 U.S.C. § 2254 habeas corpus cases.  Holland v. Florida, 130 S. Ct. 2549, 2560 (2010).  A

19  litigant seeking equitable tolling must establish: (1) that he has been pursuing his rights

20  diligently; and (2) that some extraordinary circumstance stood in his way.  Pace v. DiGuglielmo,

21  544 U.S. 408, 418 (2005).  The Ninth Circuit has explained:

22          To apply the doctrine in "extraordinary circumstances" necessarily
            suggests the doctrine's rarity, and the requirement that
23          extraordinary circumstances "stood in his way" suggests that an
            external force must cause the untimeliness, rather than, as we have
24          said, merely "oversight, miscalculation or negligence on [the
            petitioner's] part, all of which would preclude the application of
25          equitable tolling.

26  Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.) (internal citation omitted),

1   cert. denied, 130 S. Ct. 244 (2009); see also Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir.

2   2003) (petitioner must show that the external force caused the untimeliness).  It is petitioner's

3   burden to show he is entitled to equitable tolling.  Espinoza-Matthews v. People of the State of

4   California, 432 F.3d 1021, 1026 (9th Cir. 2005).  "[T]he threshold necessary to trigger equitable

5   tolling [under AEDPA] is very high, lest the exceptions swallow the rule."  Spitsyn v. Moore,

6   345 F.3d 796, 799 (9th Cir. 2003) (citation omitted).

7          The diligence prong in Pace requires the petitioner to show he engaged in

8   reasonably diligent efforts to file his § 2254 petition throughout the time the limitations period

9   was running.  Mendoza v. Carey, 449 F.3d 1065, 1071 n.6 (9th Cir. 2006) (equitable tolling

10   "requires both the presence of an extraordinary circumstance and the inmate's exercise of

11   diligence").  The petitioner must also demonstrate that he exercised reasonable diligence in

12   attempting to file his habeas petition after the extraordinary circumstances began, otherwise the

13   "link of causation between the extraordinary circumstances and the failure to file [is] broken."

14   Spitsyn, 345 F.3d at 802.  The "extraordinary circumstances" prong in Pace requires the

15   petitioner to "additionally show that the extraordinary circumstances were the cause of his

16   untimeliness, and that the extraordinary circumstances made it impossible to file a petition on

17   time."  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotations and citations

18   omitted).

19          1.  Alleged Barriers

20          Petitioner, a native of the Ukraine, came to the United States in 1996, at the age of

21   21.  Petitioner argues that he speaks and understands little English because Russian is his primary

22   language.  Specifically, petitioner claims he "has great difficulty speaking, reading, and otherwise

23   comprehending English . . . [and] [h]is knowledge of law and legal procedure is essentially nil."

24   (Dkt. No. 26 at 2.)

25          A petitioner's lack of command of the English language in and of itself is not an

26   extraordinary circumstance that warrants equitable tolling.  Mendoza, 449 F.3d at 1070; Cobas v.

<u>Burgess</u>, 306 F.3d 441, 444 (6th Cir. 2002) (equitable tolling may be justified if language barriers actually prevent timely filing).  A non-English speaking petitioner who seeks equitable tolling "must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source."  <u>Mendoza</u>, 449 F.3d at 1070.

Here, petitioner submitted no documentary evidence to support his language barrier claim.  On the other hand, respondent provided the following evidence, and argues that petitioner is fluent in English:

a.  By March 23, 2009, petitioner had been in the United States for thirteen years, as he moved here in 1996 with his family.  (LD 7 at 10, 23.)

b.  In the statement of mitigation, filed November 14, 2006 in the state trial court, defense counsel stated that in order to immigrate to the United States, the Poyras family had to learn English.  (LD 7 at 10.)  Petitioner had graduated high school in the Ukraine, as well as graduated from a marine/maritime university, where he learned job skills.  (<u>Id.</u>)

c.  Petitioner was not provided an interpreter at his change of plea hearing on April 22, 2004, and his responses to questions were appropriate and reflected his understanding of the English language.  (LD 7 at 1-8.)

d.  In sixty pages of trial testimony offered with the statement of mitigation, petitioner testified without using an interpreter, and responded appropriately to questions posed in English.  (LD 7 at 21-82.)

e.  Prior to sentencing, petitioner wrote an articulate letter to the trial judge, in which he used words such as "elucidate," "predicament," "tribulations," "redemptive," "arduous," and "conjunction."

f.  In 2007, petitioner's reading skills were rated at a seventh grade, second month level.  (LD 7 at 83.)

1    g.  By March 26, 2008, petitioner took the Test of Adult Basic Education

2  ("T.A.B.E.") and his English skills were rated as follows:

3                reading skills, seventh grade, sixth month level
                 language skills, tenth grade, seventh month level
4                vocabulary skills, seventh grade, sixth month level
                 language mechanics, twelfth grade, ninth month level
5                spelling, tenth grade level

6  (LD 7 at 84.)

7                h.  On April 24, 2008, petitioner obtained his GED, which was administered in

8  English.  (LD 7 at 84, 86.)

9                i.  On October 17, 2008, petitioner's T.A.B.E. scores rated his English skills as

10  follows:

11                reading skills, ninth grade, sixth month level
                 language skills, tenth grade, first month level
12                vocabulary skills, tenth grade level
                 language mechanics, tenth grade, seventh month level
13                spelling, ninth grade, second month level

14  (LD 7 at 89.)

15                j.  In various ad seg placement notices (CDC-114D), petitioner was noted as

16  literate, fluent in English, able to comprehend issues.  (LD 7 at 90-93.)  In the March 25, 2009 ad

17  seg placement hearing, it was noted that petitioner did not need assistance to achieve effective

18  communication as he had a documented T.A.B.E. score of 7.6.  (LD 7 at 93.)  At another hearing,

19  petitioner "stated that he understood the Committee's actions."  (LD 7 at 94.)

20                All of this evidence rebuts petitioner's vague claim that he lacked English

21  language skills due to Russian being his native language.  Thus, petitioner is not entitled to

22  equitable tolling based on an alleged inability to understand English.

23                Finally, ignorance or lack of knowledge of the legal system is not an extraordinary

24  circumstance that would warrant equitable tolling in any event.  See Rasberry v. Garcia, 448 F.3d

25  1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an

26  extraordinary circumstance warranting equitable tolling"); see also Turner v. Johnson, 177 F.3d

390, 392 (5th Cir. 1999) ("neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling");[3] Sperling v. White, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (a lack of knowledge of the law is not an "extraordinary circumstance" beyond the petitioner's control sufficient to entitle a petitioner to equitable tolling of the limitations period). Thus, petitioner is not entitled to equitable tolling on the grounds that he had no knowledge of law or legal procedure.

2. Administrative Segregation

Petitioner contends that periods of administrative segregation ("ad seg") kept him from challenging his conviction. Specifically, petitioner claims he was held in ad seg on November 4, 2008, December 18, 2008, and January 9, 2009. (Dkt. No. 26 at 3.) Plaintiff also claims that for two weeks beginning on May 1, 2009, he was "locked inside a cell with no access whatsoever to a telephone or visitation with his family." (Id.)

Being in administrative segregation alone is not grounds for equitable tolling. See Ramirez, 571 F.3d at 998 (four month stay in administrative segregation with limited access to the law library and a copier did not justify equitable tolling because "[o]rdinary prison limitations on [one's] access to the law library and copier (quite unlike the denial altogether of access to his personal legal papers) were neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner."); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (rejecting argument that lack of access to library materials automatically qualifies as grounds for equitable tolling).

Here, petitioner failed to demonstrate how his placements in ad seg interfered with his ability to diligently pursue his claims. First, petitioner was not re-sentenced until January 21, 2009, so the 2008 and January 9, 2009 placements in ad seg pre-date the

_____

[3] There is no right to counsel guaranteed by the Sixth Amendment for collateral review. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.")

commencement of the statute of limitations, and thus are not relevant.  Second, petitioner failed

to support his claim that he was held for two weeks beginning on May 1, 2009, in a cell without

access to a phone or visitation.  Petitioner does not state that he was deprived of access to the

mail or to the law library.  Petitioner alleges no facts showing how this restricted housing kept

him from pursuing his claims.  Moreover, this placement was near the beginning of the statute of

limitations period.  Even if petitioner were subject to this restricted housing from March 23,

2009, until May 1, 2009, as documents submitted by respondent suggest (LD 8 at 3-15),

petitioner failed to show how restricted housing this early in the limitations period interfered with

his ability to pursue his claims for the remaining statute of limitations period.  Pace, 544 U.S. at

410-11, 419.  Thus, petitioner's claim of tolling due to being in ad seg is unavailing.

### 3.  Alleged Attorney Abandonment

#### a.  Petitioner's Arguments

Petitioner alleges that he is entitled to equitable tolling based on retained

counsel's failure to pursue his case after January 21, 2009.  (Dkt. No. 26 at 2.)  Petitioner

contends that his family paid retained counsel[4] $25,000.00 to represent petitioner on direct

appeal, and that on July 1, 2007, retained counsel substituted in as petitioner's counsel on appeal

in place of appointed counsel.  Subsequently, retained counsel hired another attorney to assist in

petitioner's case, and demanded petitioner's family pay another $5,000.00 for this assistance.

Between July 2007 and January 2009, petitioner alleges that retained counsel "repeatedly told

petitioner and petitioner's family not to worry about the slow progress of petitioner's case in the

appellate court because direct appeals often take awhile to get resolved."  (Id.)

In January 2009, petitioner was transported from prison to Sacramento County for

re-sentencing.  (Id. at 3.)  Retained counsel visited petitioner at the jail and informed him about

the ruling on petitioner's appeal by the Court of Appeals, but allegedly told petitioner "not to

---

[4]  For ease of reference, the court refers to the attorney who represented petitioner on
direct appeal as petitioner's "retained counsel."

1   worry . . . because [counsel] would be continuing to work hard to secure relief for petitioner in

2   the California Supreme Court and . . . in federal courts if necessary." (Id.)

3         Petitioner was transferred to Sierra Conservation Center ("SCC") in Jamestown

4   on May 1, 2009.  While trying to adjust, petitioner "firmly believed [retained counsel] was

5   continuing to represent [petitioner's] rights and interests on direct appeal and collateral review

6   proceedings as petitioner's family had given [counsel] $30,000.00 to do." (Id.)  Petitioner

7   contends he had difficulty "socializing" with other inmates due to his "foreigner status, language

8   problems, . . . religious practices, and earlier life- and safety-threatening experiences at the prison

9   in Susanville." (Id. at 4.)  However, at SCC, in May or June of 2010, petitioner became aware of

10  jailhouse lawyers, and once he met a few and told them about his case, the jailhouse lawyers

11  warned him "not to blindly trust that his attorney was continuing to diligently represent him

12  because of the 1-year time limit for seeking federal habeas corpus review." (Id.)  Thus,

13  "beginning in June 2010," petitioner and his family attempted to reach petitioner's retained

14  counsel, without success. (Id.)  On January 13, 2011, another inmate helped petitioner write

15  retained counsel to inquire about the status of his case.  On February 20, 2011, another inmate

16  helped petitioner write the California State Bar to complain about retained counsel's failure to

17  communicate, and noted that counsel failed to forward petitioner's file, and that petitioner did not

18  know if counsel had prepared the petition for review for filing in the California Supreme Court.

19  (Id. at 22.)

20        In March of 2011, petitioner received a notice from the California State Bar which

21  petitioner characterizes as showing that his retained counsel "has a history of taking money from

22  inmates' families and then abandoning the inmates without concluding his representation of them

23  and without refunding any of the fees he obtained from their families." (Id. at 4.)  Petitioner

24  provides a copy of the California State Bar's November 1, 2010 Stipulation concerning retained

25  counsel's misconduct:  improperly withheld unearned fees from two clients, Dawna Mitchell and

26  James Sisemore. (Id. at 26-40.)  Petitioner's retained counsel was placed on a suspended

1    suspension for one year, ordered to pay restitution, and placed on probation for two years.  (Id. at

2    29.)

3              Petitioner alleges that he immediately sought the assistance of a jailhouse lawyer

4    to help him prepare and file a state habeas petition, but argues that his efforts were limited

5    because retained counsel failed to return petitioner's trial record.  Petitioner only had the

6    appellate briefs received from his appointed and retained counsel prior to the re-sentencing on

7    January 21, 2009.  (Id. at 5.)  On or about August 15, 2011, petitioner mailed the state habeas

8    petition to the California Supreme Court, and included a three page explanation as to why it

9    should not be deemed untimely due to retained counsel's abandonment.  (Id. at 5, 44-45.)

10   Petitioner noted that as of July 30, 2011, retained counsel refused to return over petitioner's files

11   and transcripts.  (Id. at 44.)

12             Petitioner argued that the California Supreme Court denied the state habeas

13   petition, without comment, and without citing any case reflecting that the court viewed the filing

14   as untimely.  (Id. at 5, 48.)  Less than a month and a half later, petitioner mailed his federal

15   habeas petition, which was prepared by petitioner and his jailhouse lawyer without benefit of the

16   trial record or retained counsel's file.  (Id. at 5.)

17             Petitioner alleges that on or about March 28, 2012, the California State Bar

18   contacted petitioner's retained counsel about releasing petitioner's trial record to petitioner or his

19   family.  (Id. at 5, 50.)  By letter dated May 5, 2012, petitioner's retained counsel stated he

20   returned petitioner's file; apologized for the delay; had closed his practice, moved out of state,

21   and his files were in storage; had awaited word from petitioner's sister as to where to send the

22   file, and that she asked him to send the file to petitioner.  (Id. at 52.)  However, petitioner did not

23   receive a copy of the trial record from retained counsel until August 29, 2012, despite the letter

24   being dated May 5, 2012, and "without any of the originals of the trial record."  (Id. at 5-6.)

25             Petitioner argues that he should be entitled to equitable tolling between his

26   January 21, 2009 re-sentencing, and June of 2010, the date he discovered he should not rely on

retained counsel, because it was reasonable for him to rely on retained counsel's assurance that "everything was proceeding as planned and would continue to progress through the courts" (id. at 8), and there had been a similar lengthy delay before petitioner was unexpectedly returned to state court for re-sentencing.  Moreover, petitioner argues that his language barrier, prior prison experiences, "foreigner status," and Jewish faith demonstrate extraordinary circumstances that stood in his way of discovering his criminal proceedings were jeopardized, as was retained counsel's failure to communicate after petitioner was re-sentenced.

Petitioner contends he should be entitled to equitable tolling from June 2010 and March 2011, while he and his family were diligently attempting to locate retained counsel and persuade him to return petitioner's file, and from March 2011 and August 2011, while he and his jailhouse lawyer were preparing the state habeas petition without benefit of petitioner's trial transcripts, discovery papers, or any other records aside from "some of petitioner's earlier appellate briefs."  (Id. at 8.)  Finally, petitioner contends that after being provided equitable tolling for January 2009 through August of 2011, the habeas petition filed in the California Supreme Court would toll the statute of limitations period because it would have been filed within the one year statute of limitations period.  (Id. at 8.)

b. Respondent's Arguments

Respondent counters that petitioner failed to document his claim of attorney abandonment by providing a copy of the retainer agreement, declarations from family members clarifying the nature of retained counsel's representation, or copies of letters from petitioner or his family members addressed to retained counsel confirming their efforts to ascertain the status of petitioner's case.  Respondent points to discrepancies in petitioner's opposition as to whether counsel was retained through direct appeal rather than through collateral challenges, and argues that it is more likely that counsel was retained to represent petitioner through his first appeal, as evidenced by petitioner's reference to "appellate attorney" throughout his state habeas petition.  (Dkt. No. 31 at 6.)  Respondent also contends it was unlikely counsel would have filed a second

1  appeal in light of his success on the first appeal.  Respondent argues it is unlikely counsel would

2  have advised petitioner on January 21, 2009, that he would take the matter to the state supreme

3  court, because procedurally he would have to first file a second appeal in the Court of Appeals,

4  and it is doubtful the retainer agreement would have encompassed a second appeal.  (Id. at 7.)

5  Respondent argues it is also unlikely retained counsel would file a second appeal because of his

6  success on direct appeal.

7        Finally, respondent points out that petitioner's claim that retained counsel

8  informed petitioner on January 21, 2009, that "although the state appellate court agreed that

9  petitioner was wrongly sentenced, it had denied petitioner's appeal in all other respects" (dkt. 26

10 at 3:14-16), conflicts with petitioner's February 20, 2011 letter to the California State Bar where

11 he claimed that retained counsel had not "communicated to me the Cal. Ct. of App. Opinion (nor

12 did the Court)" (dkt. no. 26 at 22).

13        c.  Legal Standards

14        Equitable tolling is available "where an attorney's misconduct is sufficiently

15 egregious," such as where an attorney refuses to file a petition at the client's request or when the

16 attorney abandons the client.  Spitsyn, 345 F.3d at 800; Holland, 130 S. Ct. at 2568 (Alito, J.,

17 concurring).  Abandonment consists of "near-total failure to communicate with petitioner or to

18 respond to petitioner's many inquiries and requests."  Id.  Equitable tolling is also available

19 where a petitioner is denied access to his case file for an extended period of time.  Lott v.

20 Mueller, 304 F.3d 918, 924 (9th Cir. 2002).  Nevertheless, "the threshold necessary to trigger

21 equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule."  Spitsyn,

22 345 F.3d at 799 (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).  Equitable

23 tolling is not available "in non-capital cases where attorney negligence has caused [an untimely]

24 filing of a petition."  Spitsyn, 345 F.3d at 800.  See also Lawrence v. Florida, 549 U.S. 327, 336

25 (2007) (equitable tolling not available merely because of a counsel's ordinary negligence, such as

26 "miscalculating the limitations period").

1

2          d. Analysis

3          The court finds that petitioner has not demonstrated that his retained counsel

4 committed egregious misconduct.  Petitioner's alleged "abandonment" claim fails because

5 petitioner did not demonstrate that retained counsel was retained to pursue a second appeal, or to

6 pursue collateral challenges in state or federal court.  Indeed, petitioner initially states that

7 retained counsel was retained to represent petitioner "on direct appeal," and that retained counsel

8 told petitioner not to worry about the slow progress "because direct appeals often take awhile."

9 (Dkt. No. 26 at 2.)  This understanding is supported by petitioner's filing in the California

10 Supreme Court, where petitioner stated that retained counsel was retained to represent petitioner

11 through direct review, including the filing of a petition for review in the California Supreme

12 Court.  (LD 4 at (1):10-13.)

13          Petitioner claims that retained counsel informed petitioner on January 21, 2009,

14 that petitioner should not worry because counsel would continue to secure petitioner relief "in the

15 California Supreme Court and then in the federal court if necessary."  (Dkt. No. 26 at 3.)

16 However, as respondent points out, before counsel could file in the California Supreme Court, he

17 would be required to file a second appeal in the California Court of Appeal.  Moreover, it appears

18 counsel did not file a second appeal; indeed, it appears he took no additional steps following the

19 January 21, 2009 re-sentencing.  This chronology also supports the court's view that retained

20 counsel was only retained to represent petitioner through the first appeal.  Petitioner provided no

21 competent evidence to the contrary.  Specifically, petitioner did not provide a copy of the retainer

22 agreement.  Petitioner submitted no declarations by family members expressing their

23 understanding of the retainer agreement.  Petitioner's self-serving declaration, long after counsel

24 was retained in 2007, is insufficient.[5]

25 _____

26          [5]  The court notes that the California State Bar website confirms the discipline imposed as
to clients Mitchell and Sisemore, but does not reflect that petitioner's retained counsel was

Petitioner also failed to provide declarations from family members articulating their contacts with petitioner's retained counsel, if any, in an effort to ascertain the status of his case after February 21, 2009.  Petitioner did not provide copies of letters he or his family may have written to retained counsel after February 21, 2009, to inquire as to the status of his case. Respondent provided a copy of petitioner's prison mail logs after his May 1, 2009 transfer to SCC, and the only letter reflecting petitioner's retained counsel's name was counsel's letter dated August 29, 2012, reflected on the incoming mail log.  (LD 6.)  The outgoing mail logs reflect no outgoing letters directed to petitioner's retained counsel.  (Id.)

On this record,[6] the court cannot find that retained counsel committed egregious conduct or "abandoned" petitioner; thus, no extraordinary circumstance prevented petitioner's timely filing.

4.  Diligence

Moreover, even if petitioner had satisfied his burden of establishing that retained counsel's conduct meets the "extraordinary circumstances" requirement, petitioner failed to meet his burden of establishing that he exercised diligence in pursuing habeas relief and that his failure to file a timely federal petition was attributable to retained counsel's conduct and not his own. Attorney malfeasance, without more, is not sufficient to warrant equitable tolling.  Spitsyn, 345 F.3d at 802; Baldayaque v. United States, 338 F.3d 145, 152-53 (2nd Cir. 2003).

As noted above, a petitioner is entitled to equitable tolling only where he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.  Holland, 130 S. Ct. at 2562.  The diligence prong

---

disciplined for any alleged misconduct in petitioner's case.  See the State Bar of California, http://members.calbar.ca.gov/fal/Member/Detail/176413 (last visited Jan. 29, 2013).

[6]  The court considered ordering further briefing to allow petitioner an opportunity to present a copy of the retainer agreement.  However, as discussed more fully below, because petitioner concedes his own inactivity over a one and half year period, he would not be entitled to equitable tolling in any event.  Thus, further briefing is not required.

of equitable tolling requires petitioner to show that he was engaged in reasonably diligent efforts to file his § 2254 petition throughout the time the limitations period was running.  See Mendoza, 449 F.3d at 1071 n.6 (equitable tolling "requires both the presence of an extraordinary circumstance and the inmate's exercise of diligence" during the relevant time period); see also Pace, 544 U.S. at 419 (rejecting equitable tolling and noting in part that petitioner waited over five months after his state post-conviction proceedings became final before filing his federal habeas petition).  The diligence required for equitable tolling is "reasonable diligence[.]" Holland, 130 S. Ct. at 2565; see also Baldayaque, 338 F.3d at 153 ("The standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable* diligence.").  "The purpose of requiring a habeas petitioner to show diligence is to verify that it was the extraordinary circumstance, as opposed to some act of the petitioner's own doing, which caused the failure to timely file." Doe v. Busby, 661 F.3d 1001, 1012-13 (9th Cir. 2011) (citations omitted).

Here, the statute of limitations period ran from March 23, 2009, until March 23, 2010.  Petitioner concedes that he did nothing to pursue his rights from the date he was re-sentenced, January 21, 2009, until June of 2010, a period of about a year and a half.  (Dkt. No. 26 at 4, 7-8.)  Petitioner's failure to act during this one and a half year period cannot be construed as reasonable.

Petitioner eventually availed himself of the assistance of another inmate in June of 2010.  Petitioner makes a vague argument that he was unable to "socialize," based on an alleged language barrier this court found unpersuasive, an alleged religious barrier that petitioner failed to explain, alleged earlier life- and safety-threatening experiences at the prison in Susanville, also unsupported by facts or evidence, and his alleged "foreigner" status.

However, the record does not support this argument.  Petitioner was in the United States for almost ten years prior to his prison sentence on November 16, 2006.  (LD 4 at 2.) Petitioner's direct appeal was granted, and petitioner was re-sentenced on January 21, 2009.  In light of petitioner's incarceration from 2006 to 2009, the court is not persuaded that his alleged

inability to "socialize" prevented him from availing himself of the resources available.  While conditions of confinement are harsh, prisons have law libraries, litigation coordinators, other staff, other inmates, and jailhouse lawyers, all of which petitioner failed to demonstrate he availed himself of in a timely manner.  Even in the face of serious mental illness, habeas petitioners are charged with diligently pursuing their rights:  "With respect to the necessary diligence, the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available."  Bills v. Clark, 2010 WL 4968692 (9th Cir. 2010).[7]  Thus, petitioner fails to demonstrate he timely or diligently sought the assistance that is available in prison.

Petitioner claims that he was entitled to rely on retained counsel's assurance, on February 21, 2009, that he would pursue petitioner's claims on petitioner's behalf.  However, petitioner fails to demonstrate that retained counsel made such a statement, or that counsel was retained to represent petitioner beyond the direct appeal, including collateral challenges in state or federal court.  Therefore, petitioner's case is unlike Spitsyn and Doe, where the petitioners specifically retained counsel to file a habeas petition in federal court.  Id.

Moreover, petitioner's efforts to contact retained counsel after June 2010 came too late, but in any event, are unsupported by facts or evidence such as specific dates, copies of letters, or declarations from family members.  The prison mail log from SCC confirms that petitioner did not write to retained counsel between May 1, 2009, and October 2, 2012.  (LD 6.)

---

[7]  The Ninth Circuit remanded Bills to the district court after stating:

> to evaluate whether a petitioner is entitled to equitable tolling, the district court must:  (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

Bills, 2010 WL 4968692 at *8 (emphasis added).

1   Thus, reliance on <u>Holland</u> is unavailing, inasmuch as Mr. Holland "not only wrote his attorney

2   numerous letters," he "also repeatedly contacted the state courts, their clerks, and the Florida

3   State Bar Association." <u>Holland</u>, 130 S. Ct. at 2565.  In addition, Mr. Holland filed his federal

4   petition five weeks late; whereas petitioner filed his federal petition almost two years too late.

5          Finally, due to the long period of inactivity, any possible link between petitioner's

6   failure to timely file the federal petition and appellate counsel's alleged misconduct of many

7   years before, is broken.  <u>Spitsyn</u>, 345 F.3d at 802.  Here, petitioner was warned in June of 2010

8   that petitioner may not want to rely on retained counsel because of the one year statute of

9   limitations.  Because over a year and a half had elapsed since petitioner's January 21, 2009 re-

10  sentencing, petitioner should have quickly pursued his rights.  Petitioner did not.  Rather than

11  immediately writing to the court or counsel to inquire whether a habeas petition had been filed,[8]

12  or drafting a protective petition,[9] petitioner allegedly wrote his first letter to retained counsel on

13  January 13, 2011,[10] over six months later, and then on February 20, 2011, wrote to the California

14  State Bar.  These delayed efforts do not constitute reasonable diligence.

15         Petitioner did not file his state habeas petition in the California Supreme Court

16  until August 15, 2011, over a year after jailhouse lawyers warned petitioner.  Thus, petitioner's

17

18         [8]  The mail log reflects only one outgoing letter in 2010 (LD 6): on December 14, 2010,
    petitioner wrote a letter to Maureen Fox, attorney at law, who was first appointed to represent
19  petitioner on appeal on January 23, 2007, but was substituted out on or about July 1, 2007, when
    petitioner retained counsel. (Dkt. No. 26 at 2; 11.)  Petitioner's first letter in 2011 was his April
20  26, 2011 letter to the California State Bar.  (LD 6.)  His next two letters were mailed on August
    16, 2011, to the California Supreme Court and the California Attorney General.  (LD 6.)
21
           [9]  Petitioner did not receive his file from retained counsel until August of 2012.
22  However, with the assistance of jailhouse lawyers, petitioner was able to file, on August 15,
    2011, the habeas petition in the California Supreme Court, using the appellate briefs received
23  from his appointed and retained counsel prior to his re-sentencing (dkt. no. 26 at 5).  Petitioner
    had these documents in June of 2010; thus, petitioner could have filed his habeas petition shortly
24  after June of 2010, with the assistance of jailhouse lawyers.

25         [10]  Petitioner claims that on January 13, 2011, another inmate helped petitioner write
    retained counsel to inquire about the status of his case.  This letter is not reflected on the SCC
26  outgoing mail log.

1  case is unlike <u>Doe</u>, 661 F.3d at 1015, where the petitioner filed his petition within ten days of the

2  return of his files once his attorney's deceit became known, and unlike <u>Holland</u>, where "on the

3  very day that Holland discovered that his AEDPA clock had expired due to [counsel's] failings,

4  Holland prepared his own habeas petition pro se and promptly filed it with the District Court."

5  <u>Id.</u>  Petitioner's actions, even once he discussed his case with jailhouse lawyers, were not

6  reasonable.

7        For all of the above reasons, this court cannot find petitioner's failure to take any

8  action from March 23, 2009, to June of 2010, constitutes reasonable diligence, or that his actions

9  from 2010 to 2011 were reasonably diligent.

10        Accordingly, this court finds that petitioner was not diligent in pursuing his rights,

11  and did not timely avail himself of prison resources.  Thus, petitioner is not entitled to equitable

12  tolling on these claims.

13        5.  <u>Conclusion:  Equitable Tolling</u>

14        Petitioner bears the burden of demonstrating that the AEDPA limitation period

15  should be equitably tolled.  <u>Pace</u>, 544 U.S. at 418; <u>Miranda</u>, 292 F.3d at 1065.  For the foregoing

16  reasons, this court finds that petitioner failed to demonstrate that he pursued his rights diligently,

17  or that extraordinary circumstances prevented his timely filing.   Accordingly, petitioner is not

18  entitled to equitable tolling.

19  VI.  <u>Conclusion</u>

20        Because this action is barred by the statute of limitations, IT IS HEREBY

21  RECOMMENDED that respondent's motion to dismiss (dkt no. 16) be granted, and this action

22  be dismissed.

23        These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

25  days after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

2   objections, he shall also address whether a certificate of appealability should issue and, if so, why

3   and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

4   the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

5   § 2253(c)(3).  Any reply to the objections shall be served and filed within fourteen days after

6   service of the objections.  The parties are advised that failure to file objections within the

7   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>,

8   951 F.2d 1153 (9th Cir. 1991).

9   DATED:  February 4, 2013

10

11                                    _____

12                                    KENDALL J. NEWMAN
                                     UNITED STATES MAGISTRATE JUDGE

13   poyr0563.mtd

14

15

16

17

18

19

20

21

22

23

24

25

26